UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-CR-36 (JRT/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION (Dkt. No. 57)** |
| KASSIUS ORLANDO BENSON, | |
| Defendant. | |

Defendant Benson's willful criminal conduct merits a sentence of 8 months' imprisonment. Nothing in his sentencing memorandum should convince this Court otherwise.

Defendant Benson's sentencing hearing will not be the first time he has stood before a judge of this Court awaiting the imposition of a sentence for the commission of serious tax offense. It will not be the first time defendant Benson has argued for leniency based on "accept[ance] responsibility," "exhibit[ion of] sincere remorse," and "express[ion of] genuine repentance." *See United States v. Jaedike*, 15-cr-00248-DWF-HB, dkt. no. 68 at 7-11 (pleading additionally that the defendant was extensively philanthropic, volunteered, had children that depended on the defendant of which one had a developmental disorder, and was otherwise a cornerstone to the community); *compare generally* Def. Sent. Pos., dkt. no. 57 at 13 ("[t]he record is replete with Mr. Benson's acceptance of responsibility, remorse, and shame for his actions").

But, at the very moment defendant Benson was advocating for leniency for Ms. Jaedike, he was committing the very *same* criminal acts his client had just admitted to. There is no more candid and revealing display of defendant Benson's lack of respect for our tax laws than him standing before the court minimizing the criminal conduct of his client while contemporaneously committing the very same crime. What is more is that not even Ms. Jaedike's 24-month sentence

of imprisonment was insufficient to deter defendant Benson's criminal conduct. Defendant Benson left that sentencing hearing on September 15, 2016, and, knowing the consequences of such criminal conduct, decided the crime was worthwhile to him. An eight-month sentence will tell defendant Benson, and the general public, it was not and is not.[1]

Defendant Benson's sentencing memorandum attempts to brush off responsibility for his criminal conduct. Dkt. no. 57 (blaming his crimes on a lack of skills as a business owner (at 2), his associates for not bringing in more business (at 9), that he just fell behind but intended on paying the taxes (at 9), and implies his crime was the result of purchasing a low-cost payroll service or not hiring an office manager (at 9)).[2] These excuses are addressed below.

Before becoming Chief Public Defender of Hennepin County, defendant Benson owned his own law firm for 20 years. He navigated his business through the great recession to survive and thrive. He's paid rent, utilities, managed supplies, procured office furniture, negotiated employment contracts, managed his employees, paid his employees, and paid all of his business bills, including hundreds of thousands of dollars in credit card bills. Did he fail to keep up with his monthly office rent, office utilities, and other business bills? No. Did he fail to pay over child support, his mortgage, or car payment every month? No. What this demonstrates is that defendant Benson was a sufficiently skilled business owner that was able to keep up with every single

---

[1] Defendant Benson closes his memorandum by comparing himself to the defendant in *Voss*, (an attorney convicted of Section 7202, similar loss amount, sentenced to probation). Def. Sent. Pos. at 18-19. Defendant Voss was sentenced on September 26, 2014. By this time, defendant Benson had already, for a whole year, been committing his tax fraud, and would shortly return to committing the same crime for four plus more years. No doubt defendant Benson researched *Voss* when he was representing Ms. Jaedike. What *Voss* ultimately tells this Court is the simple truth that probation had zero deterrent effect on defendant Benson.

[2] The blame of external circumstances sits in contrast with defendant Benson's assertion that he was raised to "take responsibility for your actions" and not "make excuses." Dkt. No. 57 at 12, 2.

business and personal financial obligation, except one. There is little doubt that "business skills" was not the reason he stole the withholdings.

Next, the repeated claim that defendant Benson "fell behind" is belied by fact. From the very moment defendant Benson hired an employee, he kept every penny he withheld for himself.[3] Defendant Benson would have had to have made at least one payment or even a partial payment to "fall behind." He did not. One does not fall behind on something they never start, e.g., my daughter did not fall behind on her homework when she decided never to do it in the first place. There was no falling behind, the reality is that defendant Benson decided to never pay over employment taxes from the very start.[4]

Further, defendant Benson's blame on his accounting software is puzzling.[5] The online service defendant Benson used, Paycheck Manager, alerted him every time he logged on that he was failing to pay over his employment taxes and file the necessary forms.[6] Exhibit 1 is a sample login screen that defendant Benson would have seen every time he logged on. An "Alert" banner would be the first thing he saw: "Federal 941 Q[1, 2, 3, or 4] and 940 efiling is now available for

---

[3] "The fact that Mr. Benson did not conceal his tax obligations is evidence of his intent to pay over amounts that were due and owing." Def. Sent. Pos., dkt. no. 57 at 2. "Slowly, but surely, Mr. Benson fell behind, and kept falling further behind." *Id*. at 9.

[4] From the very first paycheck he gave to his first employee in 2013, he failed to file the proper employment tax returns (Form 941) with the IRS and failed to pay over the employment taxes he withheld from his employee's wages. In 2015, when he hired employees for the second time, again, from their very first paychecks, he failed to pay over the employment taxes to the IRS and failed to file the proper IRS employment tax returns. The government is unaware of a single time defendant Benson paid over the withheld monies or filed the proper forms before 2020.

[5] "Using low-cost software, he tried to do all [the financial and office managerial work] himself." Dkt. no. 57 at 9.

[6] Defendant Benson used this online program each of the relevant charged quarters. The following exhibits are included as demonstrative of what defendant Benson would have seen throughout the years. Counsel can find the exhibits under Bates Numbers Tax-00028065, 00028061, and 00028073.

3

[year]. E-File Due: [date]." Defendant Benson ignored these alerts every time he logged on to complete his payroll. Exhibit 2 is the screen under a "Tax Forms Summary" tab for 2018. As the Court can see, it clearly informed defendant Benson that his Forms 941 have not yet been e-filed ("Not eFilled yet"). However, as the Court can also see, defendant Benson knew how to efile Forms W-2 denoted by "FEDW2: Approved." Finally, Exhibit 3 is a screenshot under the "Payroll Tax Deposit Summary" for quarters in tax year 2018 which clearly informed defendant Benson of his obligation amounts each quarter and failure to pay for them ("Make Payment; already paid?"). As discussed above, defendant Benson had zero issues paying other bills. He simply chose not to pay his tax obligations.

Finally, it is interesting that Benson pleads the loss of his job as Chief of the Public Defender's Office and the repercussions on his career as sufficient punishment for his criminal conduct in light of the fact that he would have never been appointed to the position but for his tax crimes. Dkt. no. 57 at 3 (pleading that his crimes have "severely damaged [his] reputation and squandered [] trust" and "[h]e will never walk the hallways . . . without sidewise glances and quiet whispers"). First, if defendant Benson's claim that he needed to steal the money to keep KBL "afloat" (PSR, dkt. no. 54 at 8) is accurate, then one must conclude that KBL would have failed if not for his theft. Would he have been hired as Chief had he applied after having failed to manage even a small firm? Probably not. Would defendant Benson have achieved "the pinnacle of his professional" career (dkt. no. 57 at 11), assuming the position as the Chief of the Hennepin County Public Defender's Office, if he told the hiring committee he was committing tax fraud and stealing from the United States government? Most certainly not.[7] The fact is that defendant Benson not

---

[7] The undersigned assumes that defendant Benson did not inform the hiring committee that he was being audited by the IRS and that he had a long history of stealing from the United States.

only benefitted to the tune of over $200,000, but also profited by misleading those who hired him into believing that he was the most qualified candidate. He was not. Defendant Benson stepping down from a job he should have never had in the first place is not punishment. His theft and subsequent dishonesty also robbed the most qualified candidate of their opportunity to achieve "the pinnacle" of their own career. Though we cannot yet go back in time and rewrite the outcome of history, this Court can give just punishment that takes into account all of the harm defendant Benson's actions caused.

/ / /

---

But the government did not obtain his application file. If, in fact, defendant Benson did disclose these facts to the committee, the government apologizes and welcomes the correction.

The Court should not consider what is "generally appropriate" when formulating defendant Benson's sentence as he asks this Court to do. *See* U.S.S.G. § 4C1.1. Instead, this Court should consider the unique characteristics of defendant Benson (attorney, pillar of the community, respected leader in the legal field), and the manner and specific intent in which he committed his crimes (knowingly, willfully, undeterred by firsthand knowledge of the punishment, and without shame) and determine that the appropriate sentence for defendant Benson includes eight months in prison.

Dated: May 1, 2024                          Respectfully submitted,

STUART M. GOLDBERG
Acting Deputy Assistant Attorney General
U.S. Department of Justice Tax Division

*s/ Matthew J. Kluge*
Matthew J. Kluge
Bar Number (PA# 204285)
Attorney for the United States
Assistant Chief, Tax Division
150 M St. NE
Washington, D.C. 20002
Telephone: 202-305-3301
Matthew.J.Kluge@usdoj.gov

*s/ Christopher Lin*
Christopher Lin
Bar Number (NY# 5028618)
Attorney for the United States
Trial Attorney, Tax Division
150 M St. NE
Washington, D.C. 20002
Telephone: 202-514-2901
Christopher.E.Lin@usdoj.gov